816 F.2d 157
 17 Soc.Sec.Rep.Ser. 406, 22 Fed. R. Evid. Serv. 1578,
Unempl.Ins.Rep. CCH 17,271
Wanda L. WOOLDRIDGE, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 86-3084.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 9, 1987.
Decided April 15, 1987.
 
 Roger Daniel Forman, on brief, for appellant.
 Dorothea J. Lundelius, Asst. Regional Counsel, Office of the General Counsel, Dept. of Health and Human Services (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Asst., Regional Counsel, David A. Faber, U.S. Atty., Gary E. Pullin, Asst. U.S. Atty., on brief, for appellee.
 Before HALL and CHAPMAN, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 Wanda L. Wooldridge appeals an order of the district court, affirming the Secretary's denial of her claim for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. Secs. 416(i) and 423(d). This denial was based upon the determination of an administrative law judge ("ALJ") that Wooldridge has the residual functional capacity to perform light work and was not disabled under the Secretary's medical-vocational guidelines or "grids." The district court affirmed, finding substantial evidence to support the ALJ's decision. We disagree and conclude that the decisions below were deficient in several critical respects. Accordingly, we vacate the judgment of the district court and direct that the case be remanded to the Secretary for further consideration and findings consistent with this opinion.
 
 I.
 
 2
 Wanda Wooldridge was born on August 4, 1931, and was 54 years old at the time of her hearing before the ALJ. She was last insured for disability benefits on December 31, 1982, when she ceased working due to breathing difficulties. Claimant has a ninth grade education and the majority of her past work experience was as a waitress.
 
 
 3
 Wooldridge applied for social security disability benefits in January, 1984, alleging that she has been disabled since October, 1981, due to emphysema and bleeding from the bowels. Her application was denied initially and on reconsideration.
 
 
 4
 At the administrative hearing on her claim, Wooldridge testified that she was unable to afford medical treatment for her problems until August 8, 1983, and the record contains no medical evidence concerning claimant's condition prior to the expiration of her insured status on December 31, 1982. According to Wooldridge, she continued to work "part time" or intermittently as a waitress until the end of 1982.
 
 
 5
 In response to questioning from the ALJ, claimant stated that she had difficulty breathing, sleeping, walking, and as a result of a mastectomy in 1984, moving her right arm. Also in 1984, Wooldridge had several polyps removed from her colon. Wooldridge further complained of low blood count, dizziness, and fainting, as well as chest and back pain. She stated that she was prescribed various medications for these conditions, including pills and inhalers for her breathing impairment. According to claimant, she can walk only twenty feet before being required to rest and can stand only five to ten minutes before becoming dizzy. Wooldridge testified that her husband assists her in getting dressed and brushing her hair and also does the housework and grocery shopping. The medical records from the Cabin Creek Health Association Clinic, where Wooldridge has been a patient since August 8, 1983, confirm the treatment of her ailments.
 
 
 6
 Subsequent to the hearing, on December 27, 1984, Alan Milliner, M.D., of the Cabin Creek Health Association, wrote in a letter to claimant's counsel that it was apparent that Wooldridge began having significant problems with her breathing about fifteen years ago and for a number of years had used a non-prescription Primatene Mist Inhaler several times a day. According to Dr. Milliner's report, Wooldridge:
 
 
 7
 experienced dyspnea [difficult or labored breathing] from asthma which was severe enough to cause ... loss of consciousness quite frequently. These exacerbations were precipitated even by activities requiring minimal effort such as walking two blocks to the store. She received no regular medication for her asthma until she established care at Cabin Creek Medical Center.
 
 
 8
 Dr. Milliner opined that based on claimant's history "she has been severely disabled by her asthma since at least 1980" and that "[e]ven today on maximal medical therapy for her asthma she remains severely dyspneic even at rest." Dr. Milliner's letter was submitted to the ALJ for consideration.
 
 
 9
 In his decision denying benefits dated March 5, 1985, the ALJ noted that "[c]linical findings in April and June 1984 confirmed that the claimant suffers from chronic obstructive pulmonary disease and should avoid temperature extremes, dust, fumes, humidity and environments where major pulmonary irritants are present." The ALJ further found that Wooldridge's breathing impairment was severe but not of a sufficient degree to meet the Secretary's listing of impairments. Although the ALJ concluded that claimant could not perform her past work as a waitress, he found that she could "perform the physical exertion requirements of work except for lifting more than 20 pounds at a time with occasional lifting or carrying of 10 pounds." Based on this finding, the ALJ determined that Wooldridge retained the residual functional capacity to perform light work. Applying the Secretary's medical-vocational guidelines or "grids," he concluded that she was not disabled.
 
 
 10
 The Appeals Council denied review and Wooldridge appealed the decision to the district court. The case was referred to a magistrate for a recommended decision. The magistrate found that:
 
 
 11
 The only evidence of a significant impairment existing before December 31, 1982, is by history ... Also, the plaintiff continued to work until sometime in December, 1982 ... There is no question that after December 31, 1982, the plaintiff suffered from some severe impairments, but not before that date.
 
 
 12
 The magistrate rejected claimant's argument that, in light of her nonexertional impairment, the ALJ improperly relied upon the "grids," concluding that "the record does not show the presence of a severe non-exertional impairment prior to December 31, 1982."
 
 
 13
 The district court affirmed the magistrate's decision in Woolridge v. Secretary, 637 F.Supp. 741 (S.D.W.Va.1986).[1] Specifically, the district court concluded that Dr. Milliner's report was not supported by the record and that:
 
 
 14
 The medical testimony and opinion based thereon taken and rendered by Dr. Milliner were properly given no consideration by the Magistrate, even though they came from a "treating" physician. The evidence in the form offered is pure hearsay and does not satisfy the requirements of admissibility under Rule 803(4), Federal Rules of Evidence. Subsequent history taken by Dr. Milliner was not for the purposes of treatment or diagnosis but rather done to supply a critical evidentiary requirement in support of Plaintiff's claim for benefits under the Act. In other words, it was prepared solely for the purposes of this litigation. Since the doctor's opinion has no evidentiary support in the record and is, in fact, contradicted by the record, it properly was not considered by the Magistrate or Secretary in their conclusions to deny benefits.
 
 
 15
 Id. at 742.
 
 
 16
 This appeal followed.
 
 II.
 
 17
 On appeal, Wooldridge contends that the opinion of Dr. Milliner and her post-1982 evidence of disability were improperly disregarded below. Appellant also argues that the ALJ erred in his findings with respect to her capacity to perform light work and to the application of the "grids" in her case. We agree with each of these contentions and conclude that a remand is necessary to reconsider Wooldridge's claim.[2]
 
 
 18
 The ALJ's decision made no mention of Dr. Milliner's opinion that Wooldridge has been disabled since 1980 and the magistrate declined to give Dr. Milliner's opinion any weight. The district court agreed with the magistrate, holding that Dr. Milliner's report was hearsay and was properly given no consideration. Each of these decisions is in error.[3]
 
 
 19
 In Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court held that Congress intended for social security disability proceedings to be informal and not governed by strict rules of evidence. The Court specifically approved the admission of written medical reports by licensed, examining physicians despite their hearsay character. Id. 402 U.S. at 402, 91 S.Ct. at 1428, 28 L.Ed.2d 842. Thus under Perales, Dr. Milliner's report was entitled to be considered.[4]
 
 
 20
 Furthermore, this Court has held that medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability. Cf. Cox v. Heckler, 770 F.2d 411 (4th Cir.1985) (remand was proper to consider post-insured status evidence where record demonstrated that claimant had a progressively deteriorating lung condition which may have reached a disabling degree by the time claimant's insured status expired); Branham v. Heckler, 775 F.2d 1271 (4th Cir.1985) (fact that intelligence quotient test was not taken until 1982 did not preclude a finding of retardation and disability in 1979); Moore v. Finch, 418 F.2d 1224 (4th Cir.1969) (error not to consider reports of medical evaluations subsequent to expiration of claimant's insured period of coverage as evidence of possible earlier and progressive degeneration).
 
 
 21
 Dr. Milliner was a member of the staff of the clinic that had treated Wooldridge since she first sought help for her problems in August, 1983. As such, we find that even though his opinion is based largely on the claimant's medical history, it concerns the progressively deteriorating nature of her breathing impairment and must be considered on remand.
 
 III.
 
 22
 In her brief, appellant claimed that the ALJ's reliance on the "grids" was error because automatic resort to the "grids" is reserved for exertional impairments and is not appropriate here due to Wooldridge's inability to work in environments which exacerbated her breathing impairment. At argument, however, Wooldridge claimed that the ALJ's conclusion that she could occasionally lift or carry ten pounds constituted a finding that she was capable of performing only sedentary, as opposed to light work, and that under the "grids' " treatment of sedentary work for a person of her age, education, and work experience she is disabled. See 20 C.F.R. Part 404, Subpart P, App. 2 Sec. 201.00, Rule 201.09. Although we cannot agree with the appellant that at this stage of the proceedings she is entitled to benefits based on the "grids," we do conclude that the ALJ's findings on this point are inconsistent and confusing and constitute an additional reason for remanding the case.
 
 
 23
 The Secretary's regulations, 20 C.F.R. Sec. 404.1567, distinguish the physical exertion requirements of sedentary work from those of light work, as follows:(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 24
 (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.
 
 
 25
 (emphasis added). In the instant case, the ALJ concluded that Wooldridge was capable of performing light work prior to December 31, 1982, but in reaching this conclusion, he stated that claimant could lift no "more than 20 pounds at a time with occasional lifting or carrying of 10 pounds." (emphasis added) Under the regulation, however, a person with the capacity to perform light work must be able to lift or carry up to ten pounds frequently. No such finding was made in Wooldridge's case and on remand this matter must be clarified.
 
 
 26
 Moreover, in light of appellant's environmental restrictions which prevent her from being exposed to fumes, dust, humidity, and temperature extremes, the "grids" may not automatically be applied to deny disability. See Heckler v. Campbell, 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983) ("[i]f an individual's capabilities are not described accurately by [the 'grids'], the regulations make clear that the individual's particular limitations must be considered"); Roberts v. Schweiker, 667 F.2d 1143 (4th Cir.1981) (where claimant's nonexertional limitation relating to need to avoid inhalation of lint was specifically recognized by the Secretary, it was reversible error to mechanically apply regulatory tables to find nondisability on claim for social security disability benefits); 20 C.F.R. Part 404, Subpart P, App. 2 Sec. 200.00(e)(2) (environmental restrictions, including an inability to tolerate dust or fumes, specifically recognized as nonexertional limitations where "grids" are not fully applicable). In this case, the Secretary will, therefore, be required to utilize a vocational expert in the remanded proceedings to assist in evaluating Wooldridge's work capabilities.
 
 
 27
 On remand the parties may submit any additional evidence they deem pertinent for proper consideration of Wooldridge's claim. In particular, we note that claimant's counsel stated during oral argument of this case that Wooldridge may be able to demonstrate additional quarters of covered employment between the years 1978 and 1980. Such proof would have the effect of extending the period of her insured status. Claimant should be given the opportunity to develop this matter further through evidence including, but not limited to, the testimony of co-workers or others who knew of this employment.
 
 IV.
 
 28
 For the foregoing reasons, the judgment of the district court is vacated and remanded, with instructions to remand to the Secretary for proceedings consistent with this opinion.
 
 
 29
 VACATED AND REMANDED.
 
 
 
 [1]
 The district court's opinion incorrectly refers to claimant as Woolridge rather than Wooldridge
 
 
 [2]
 In her appellate brief, Wooldridge further argues that she meets the Secretary's listing of impairments for respiratory disease. Given our conclusion to remand this case for further consideration, we express no view on that issue but would permit appellant on remand to renew her argument with respect to the listings, if she so desires
 
 
 [3]
 The magistrate also erred in concluding that Wooldridge had no severe impairment at all before December 31, 1982. This conclusion is in direct conflict with the ALJ's findings that claimant had severe chronic obstructive pulmonary disease which prior to December 31, 1982, precluded her from performing her past work as a waitress
 
 
 [4]
 The fact that this report was directed to claimant's attorney in furtherance of Wooldridge's claim likewise does not bar its admission. Such a practice is routine in social security proceedings. In fact, all of the medical reports prepared by consultative physicians are done at the request of the Secretary to assist in determining a claim. We can perceive no basis in the statute or case law for excluding medical reports of any examining physician on the ground that they were prepared for purposes of the claim being litigated