John W. NECESSARY, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. 86–64–CIV–7.

United States District Court, E.D. North Carolina, Wilmington Division.

May 5, 1987.

Legal Services of the Lower Cape Fear, James J. Wall, Wilmington, N.C., for plaintiff.

U.S. Atty., Raleigh, N.C., for defendant.

## ORDER

DUPREE, District Judge.

Plaintiff, John W. Necessary, brings this action pursuant to Section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Secretary of Health and Human Services, denying plaintiff's application for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Act, as amended. 42 U.S.C. §§ 416(i), 423. The action is before the court on plaintiff's motion for summary judgment and defendant's motion for judgment on the pleadings, each being supported by a memorandum. For the reasons expressed below, plaintiff's motion will be granted, the final decision of the Secretary will be reversed, and the action will be

remanded to the Secretary for computation of benefits.

On December 17, 1984 plaintiff applied for a period of disability and disability insurance benefits. Plaintiff alleged an onset date of disability as of July 17, 1981 due to pneumoconiosis (black lung), a myocardial infarction, hearing difficulty and swelling of the right leg. After plaintiff's application was denied a hearing was held before an administrative law judge (ALJ). Finding that plaintiff could perform his previous work as a coal mining superintendent, the ALJ concluded that plaintiff was not "disabled" within the meaning of the Act, and denied plaintiff any benefits. The Appeals Council affirmed the ALJ's decision, making the case ripe for judicial review under 42 U.S.C. § 405(g).

The scope of judicial review of the Secretary's decision is limited to determining whether there is substantial evidence to support the findings and conclusion that plaintiff was not entitled to a period of disability and disability insurance benefits. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966) (citations omitted). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Id.* Where there is conflicting evidence, the Secretary, not the reviewing court, must resolve the conflict. *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir.1964).

It is undisputed that plaintiff must establish his disability as of or prior to March 31, 1984, the last date through which the special disability insured status earnings requirements were met. A person is disabled and eligible to receive social security disability benefits when that person is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). That impairment must be of such severity that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy...." *Id.* § 423(d)(2)(A). *See also* 20 C.F.R. § 404.1520 (evaluation of disability in general); *id.* Part 404, Subpart P, Appendix 1 (listing of disabling impairments).

Plaintiff argues that the ALJ applied erroneous legal standards in evaluating the objective medical testimony and the subjective testimony of plaintiff and others. Defendant counters by arguing that the Secretary's findings and conclusions are supported by substantial evidence. The evidence upon which the ALJ based his decision is, in relevant part, as follows:

At the hearing held November 6, 1985, plaintiff appeared and testified that he was sixty-six years old, that he had completed high school and two years of college, and that he had past work experience as a coal miner and a coal mining superintendent. Plaintiff alleged disability due to a combination of problems including chronic back pain which began in the 1960's and gradually worsened; swelling and weakness of the wrists; numbness of the arms; weakness and swelling of the right leg, knee and ankle; residuals of a heart attack with a persistent irregular heart beat; and a poor memory. As a result of his impairments, plaintiff stated that he could not use a telephone for any significant period of time without his arm going to sleep; that he could not even lift a coffee cup when his wrist problem was active; that he could not hang curtains or shave because he could not engage in overhead reaching; that he could not lift a bag of groceries; that he had difficulty putting on his pants because he could not lift his leg; and that he had to be careful when walking because his knee tended to give way and cause him to fall. Plaintiff also alleged that for approximately one year he had been unable to walk

effectively and was unable to sleep because of his pain. Plaintiff further stated that for the previous two years he was unable to mow grass, hunt and fish as he had done in the past.

With respect to his work history, plaintiff testified that he entered the coal mines over forty years ago, working his way up to superintendent. Plaintiff stated that he began having problems because of his combined impairments which prevented him from engaging in the required walking, bending, crawling and lifting. As part of his job, plaintiff had to carry approximately twenty pounds of equipment while walking approximately ten miles per day in the mines. Plaintiff stated that he was responsible for the safety of the entire mine and that such stress ultimately resulted in his heart attack in 1978. Plaintiff returned to the mine after suffering a heart attack but was eventually "let go" on July 31, 1981 because he could no longer satisfactorily keep pace. In October 1981 plaintiff sought another mining job but was not hired. From January 1, 1983 through March 10, 1983, plaintiff worked three days per week, eight hours per day, inspecting condominiums at Carolina Beach, North Carolina for defects. According to plaintiff he could not walk up one full flight of stairs before experiencing difficulty breathing, a painful back ache, and a swollen right knee and, therefore, had to quit.

The medical evidence proffered at the hearing principally dates from September 1978 when plaintiff was hospitalized due to a heart attack. While hospitalized an electrocardiogram (EKG) showed plaintiff's heart as having a QRS duration of .12 and a PR duration of .22. Upon discharge plaintiff was advised to participate in graded activities and to monitor his sodium intake. He returned for follow-up care in 1979 and continued to work in the coal mines until July 1981.

After leaving the mines plaintiff sought employment with United Pocohontas Coal Company. A pre-employment physical was performed by Dr. John Whitlock in October 1981. Dr. Whitlock's examination revealed evidence of pneumoconiosis, arteriosclerotic vascular disease, some degenerative disc disease of the lumbar spine, and a small arteriosclerotic aneurysm of the abdominal aorta of which plaintiff was informed. Plaintiff told Dr. Whitlock that his health was excellent and that there were no impediments to his working as a coal mining superintendent from either exertional or environmental standpoints. Plaintiff denied having lost time from work due to illness within the previous two years and denied any physical complaints or disabilities, any use of medication, or any requirement for special work assignments because of impairment. Dr. Whitlock deemed the claimant physically and mentally qualified to operate a motor vehicle and noted no restrictions on plaintiff's ability to work.[1] The record is unclear as to precisely why but plaintiff was not hired by United Pocohontas.

In January 1982 plaintiff was admitted to the Veterans Administration Hospital in Fayetteville, North Carolina where he was diagnosed as having an aortic abdominal aneurysm. Plaintiff was discharged on January 22 to consider the possibility of surgery.

The record next indicates an examination of plaintiff in December 1984 by Dr. Bashir Ameji. Plaintiff complained of problems with shortness of breath for thirty years which had recently worsened to the extent that he became easily and severely fatigued after walking only one-half block. He also complained of smothering episodes throughout the day and night. The doctor found that plaintiff's chest expansion was reduced, that air entry into both lungs was reduced, and that plaintiff had rales and

---

1. Although the ALJ found that Dr. Whitlock noted no restrictions on plaintiff's ability to work, a review of the report indicates inconclusiveness at most. When asked on the form report, "Do you approve applicant without restriction for the type of work he is seeking?," neither block designated "Yes" or "No" was checked. Moreover, that part of the form entitled "Physician's summary and elaboration of all positive and pertinent findings on physical exam and personal and occupational history" was also left blank. Therefore, the fact that Dr. Whitlock "noted no restrictions" is not persuasive as to any point.

wheezing in both lungs. Pulmonary function testing revealed findings within normal limits, leading Dr. Ameji to believe that plaintiff's symptomotology of chronic obstructive pulmonary disease was secondary to plaintiff's pneumoconiosis. Plaintiff's respiratory impairment was not deemed severe although plaintiff was advised to take precautions against exposure to dusty environments or environments with coal dust, which would exacerbate his condition.

Dr. Ricardo Ocampo saw plaintiff in late December 1984 for evaluation of the same symptoms described to Dr. Ameji. Dr. Ocampo found no evidence of rales or wheezes or other respiratory abnormalities or lung problems. There was also no finding of any cardiac abnormalities, including no heart gallop and no heart murmurs. There is no indication, however, that Dr. Ocampo ordered an EKG. Plaintiff did have pitting edema of both lower extremities. Chest x-rays were consistent with coal workers' pneumoconiosis.

Plaintiff was next seen at the VA Hospital in Fayetteville from March 12 through March 22, 1985. Plaintiff was referred to the emergency room there because of an irregular heart beat and the presence of an abdominal aortic aneurysm. X-rays of the abdomen showed evidence of degenerative arthritis of the lumbar spine as well as the presence of an aneurysm. An EKG showed left anterior hemiblock and an intraventricular conduction defect, however the record is silent as to the QRS and PR durations exhibited by the test. Plaintiff's discharge diagnosis was coronary artery disease with cardiomegaly and angina pectoris, possible diverticulitis, and pneumoconiosis. On June 9, 1985 plaintiff was again admitted to the VA Hospital where he underwent an exploratory laparotomy, a partial sigmoid colectomy with end-colostomy and mucous fistula, an appendectomy and an ureterostomy for a transected left ureter. Plaintiff was discharged on August 2, 1985.

On January 31, 1985, Dr. C.H. Rand, Jr., of East Carolina University, conducted an evaluation of plaintiff which included pulmonary function studies and a resting EKG. Dr. Rand found that plaintiff could not walk but for one to two blocks or lift more than twenty pounds without suffering dizziness and that plaintiff could carry fifteen to twenty pounds approximately forty to fifty feet. However, the doctor stated that the date on which these limitations were first manifested was unknown. The doctor also noted that when plaintiff walked or exerted himself, he experienced occasional pain of cardiac origin marked by pulling sensation in the lateral chest wall. Dr. Rand rendered the diagnosis of moderately severe obstructive ventilatory defect, chronic bronchitis, ischemic heart disease with old myocardial infarction and left bundle branch block with multifocal ectopic ventricular beats, possible angina pectoris on exertion, and probable pneumoconiosis.

Dr. Landon B. Anderson, a board certified orthopedist, examined plaintiff on November 11, 1985, and assessed plaintiff's condition in a report issued November 21, 1985. Dr. Anderson acknowledged plaintiff's history of back complaints and of degenerative changes on x-rays of the lumbar spine. He concluded that, in his opinion, plaintiff's combined knee and back impairments equaled the criteria for disability in listing Section 1.03, and that these problems had been gradual in onset. Dr. Anderson concluded that he could not determine on the basis of available evidence whether plaintiff's problems had reached this level of severity by March 1984.

On December 11, 1985, plaintiff was examined by Dr. Daniel Gottovi, a board certified specialist in internal medicine with a subspeciality in pulmonary diseases. Dr. Gottovi performed his own examination in addition to reviewing the findings of Drs. Rand and Anderson discussed above. Dr. Gottovi noted that Dr. Rand's findings were similar to his and he concurred in Dr. Rand's diagnosis of chronic bronchitis, ischemic heart disease with old myocardial infarction and left bundle branch block with multifocal ectopic ventricular beats. Most importantly, Dr. Gottovi noted that the EKG performed in 1978 after plaintiff's myocardial infarction showed evidence of left bundle branch block and that the EKG findings derived at the time of Dr. Rand's

examination were almost identical, further noting that these findings correspond to those found in the Secretary's standards on bundle branch block as found in the listing section on ischemic heart disease.

Dr. Gottovi also reviewed x-ray findings of plaintiff's lumbo-sacral spine from 1973, 1976 and Dr. Anderson's most recent findings from November 1985. The doctor stated that it was apparent to him that plaintiff had been experiencing progressive arthritic degeneration in that region since 1973. Dr. Gottovi concurred with Dr. Anderson's conclusion that the combination of impairments suffered by plaintiff resulted in a listing disability.

Dr. Gottovi opined that the combination of plaintiff's impairments "rendered him incapable of engaging in any sustained activity since 1983." The doctor further opined that "[o]ne has only to compare the EKG findings from 1978 with those found as part of Dr. Rand's examination in January of 1985 to see that there has been no change in his cardiac condition."

After reviewing the medical and subjective testimonies, the ALJ concluded that plaintiff was not disabled because he was capable of performing his past work on or before March 31, 1984. In reaching this conclusion the ALJ did not give Dr. Gottovi's assessment of a 1983 onset date any determinative weight "in view of the absence of evidence of the claimant's receipt of medical treatment or the presence of significantly abnormal findings between 1982 and late 1984...." The ALJ further stated that Dr. Gottovi's assessment of an ongoing listing impairment existing since 1978 was "not convincing in the light of the claimant's work history after 1978 and the lack of mention of the specific EKG abnormalities required to support this conclusion." After reviewing the record the court finds that the Secretary's complete dismissal of Dr. Gottovi's findings and opinion was in error, that the opinion of an ongoing listing impairment as of 1983 stands uncontradicted, and that plaintiff is therefore entitled to a finding of disability and computation of benefits based thereon.

■ The opinion of an examining physician as to the onset of disability is relevant and may be considered even if the opinion is based primarily on a claimant's past medical history. *Wooldridge v. Bowen,* 816 F.2d 157 (4th Cir.1987). *See also Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir.1974) (a medical opinion does not become unacceptable simply because it is based upon medical records and lay testimony). The examining physician's opinion may also be rendered after the expiration of claimant's insured status and even if prepared in anticipation of litigation. *Wooldridge v. Bowen, supra.* Furthermore, when a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap. *Murphy v. Bowen,* 810 F.2d 433 (4th Cir. 1987).

■ In this instance the ALJ was inevitably bothered by the fact that Dr. Gottovi's evaluation "appeared to be more of an analysis of prior reports by Dr. Rand and Dr. Anderson than an evaluation of *his* findings on *his* examination of the claimant." (Emphasis in original). However, as is indicated by *Wooldridge, supra,* this fact should have played no part in the ALJ's decision. Furthermore, the ALJ's reliance on plaintiff's work history after 1978 is misplaced because of the evidence of a listing impairment, *i.e.,* left bundle branch block. *See Stark,* 497 F.2d at 1100 (question of disability turns on whether a claimant is disabled within the meaning of the Act notwithstanding the fact that claimant actually did work). Finally, the fact that Dr. Gottovi did not mention the specific EKG abnormalities required to support a listing impairment should not have been used to discredit the doctor's opinion. *See Murphy v. Gardner,* 379 F.2d 1, 8 (8th Cir.1967) (fact that doctor's report failed to set forth in his conclusions language that may have more precisely met the requirements of the Secretary's regulations should not operate to deny entitlement to benefits). Dr. Gottovi, as has the court, compared the 1978 and 1985 findings and concluded that in addition to being "almost identical" they "correspond to those found

in Social Security's standards on bundle branch block as found in the section on ischemic heart disease." In light of the foregoing, the ALJ should not have dismissed Dr. Gottovi's opinion as having no determinative weight.

Once properly admitted, the record shows Dr. Gottovi's opinion of a 1983 onset date for plaintiff's listing disability to have been essentially undisputed. Under the Secretary's regulations a claimant with bundle branch block, evidenced by EKG tracings showing QRS duration of .12 and PR duration of .06, is considered disabled. 20 C.F.R. Part 404, Appendix 1, § 4.04(C). Plaintiff's EKG findings in 1978 and 1985 —QRS duration of .12 and PR duration of .22—exceed the listing requirement for ischemic heart disease and, therefore, establish plaintiff as disabled.

The question remains however as to the onset date. Dr. Gottovi compared the EKG findings, combined them with plaintiff's medical history, and opined that plaintiff was rendered "incapable of engaging in any sustained activity since 1983." Dr. Rand, who was hired by the Secretary to evaluate plaintiff, did not speculate as to an onset date for plaintiff's listing impairment when he examined plaintiff in 1985. This essentially left Dr. Gottovi's opinion uncontroverted, especially in light of the fact that the record does not show Dr. Rand as having reviewed plaintiff's 1978 EKG findings. Left with no opinion contra to Dr. Gottovi's, the ALJ could have sought one out, *see* 20 C.F.R. §§ 404.926, –.927, –.1527, and should have done so rather than rejecting Dr. Gottovi's opinion outright. *See Grable v. Secretary of Health, Education and Welfare*, 442 F.Supp. 465, 471 (W.D.N.Y.1977). Hence, there existed no contradiction with respect to medical opinions concerning the onset date of plaintiff's listing impairment. A physician's testimony is ignored only if there is persuasive contradictory evidence. *Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir.1983).

Therefore, in light of the foregoing, the court finds that the Secretary's finding that plaintiff was not disabled as of March 31, 1984, is not supported by substantial evidence and is hereby reversed. Defendant's motion for judgment on the pleadings is therefore denied. Furthermore, the court finds that plaintiff suffered from a listing impairment equal to or exceeding that found in Appendix 1 to the Secretary's regulations as of 1983 and that a finding of disability was warranted. Plaintiff's motion for summary judgment is therefore granted. Because no specific date in 1983 could be established as the onset date of disability, the court feels that the interest of justice dictates December 31, 1983, as such onset date. Accordingly, this action is remanded to the Secretary for computation of benefits as of December 31, 1983.

SO ORDERED.