# GEORGE THOMAS, Plaintiff

## v.

# SHIRLEY S. CHATER, COMMISSIONER OF SOCIAL SECURITY,[1] Defendant

## Civ. No. 1995-0011

## District Court of the Virgin Islands

## Div. of St. Croix

## July 12, 1996

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of Pub. L. 103-296, the Court substitutes Shirley S. Chater, Commissioner of Social Security, for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. The Court notes that all statutory, regulatory, and case references to the Secretary in this opinion are equally applicable to the Commissioner.

365

RONALD E. RUSSELL, ESQ., Frederiksted, St. Croix, U.S.V.I., *for Plaintiff*

MICHAEL A. HUMPHREYS, AUSA, United States Attorney's Office, District of the Virgin Islands, Christiansted, St. Croix, U.S.V.I., *for Defendant*

FINCH, Judge

## OPINION

Before the Court is defendant's motion, made pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings affirming the decision of the Commissioner of Social Security.

### Facts and Prior Proceedings

Plaintiff George Thomas was born in April 1945 and has a sixth grade education with an additional year of vocational training. (Tr. 59). Plaintiff was employed as a pipefitter from 1969 until June 1982 when plaintiff fell into a manhole. (Tr. 175). As a result of such fall, plaintiff alleges that he experienced severe pain in his back and lower extremities. (Tr. 29-30).

Plaintiff's treating physician, Dr. Payne, diagnosed plaintiff as having cervical myositis, lumbar pain syndrome, a herniated lumbar disk, and a possible fracture in the transverse process at the level C5. (Tr. 145). In November 1983, plaintiff underwent spinal surgery for this condition. According to plaintiff, he had only slight improvement following surgery. (Tr. 32).

Alleging low back syndrome, plaintiff filed for disability benefits under the Social Security Act on April 22, 1993. (Tr. 53). The Social

Security Administration denied plaintiff's application in June 1993. (Tr. 61). Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). The ALJ, in a decision rendered July 23, 1994, again denied plaintiff's claim for benefits. (Tr. 15-16). The ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner") when the Appeals Council refused plaintiff's request for reconsideration. (Tr. 5).

Plaintiff now seeks review by this Court of the final decision of the Commissioner. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence in the record. Conversely, the defendant moves for judgment on the pleadings, affirming the ALJ's findings. Because the Court finds a dearth of evidence to support the ALJ's decision regarding plaintiff's residual functional capacity, the Court will deny defendant's motion and will remand this matter for further consideration by the ALJ.

## Standard of Review

■ This Court is empowered by 42 U.S.C. § 405(g) to review the final determination of the Commissioner and to enter judgment upon the pleadings and transcript of the record. In doing so the Court may not reweigh the evidence, however; findings of fact of the ALJ must be accepted as conclusive if supported by "substantial evidence" in the record. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971), and must be "more than a mere scintilla." *Id*. As this Circuit has explained:

> determination of the existence vel non of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise

without which [the] review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citations omitted).

## Discussion

### A. The Legal Framework

■ Before considering plaintiff's specific allegations, the Court takes a moment to review the relatively complex analysis applied when determining whether to award disability insurance benefits. To merit such benefits, an individual must demonstrate that he is under a disability. "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

■ A five-step analysis is used to determine whether a claimant is under a disability within the meaning of section 432(d)(1)(A): (1) The ALJ must initially determine whether the claimant is presently engaged in any substantial gainful activity. If so, the claimant is not disabled; (2) if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment. If not, the claimant is not disabled; (3) if, however, the claimant demonstrates the existence of a severe impairment, and if that impairment meets a listed impairment found in the regulations, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, then the claimant is disabled and is entitled to disability benefits without further inquiry; (4) if the claimant's condition fails to satisfy the criteria of a listed impairment, however, the ALJ must then determine whether the claimant can return to his past relevant work in light of the claimant's "residual functional capacity";[2] (5) if the claimant cannot perform his past relevant

---

[2]In assessing a claimant's residual functional capacity, the ALJ must consider both "exertional impairments" — limitations on the claimant's ability to perform certain

work, the burden of proof shifts to the Commissioner, who must demonstrate that there are a significant number of jobs existing in the national economy capable of being performed by the claimant, considering the claimant's residual functional capacity and his age, education, and past work experience. If the Commissioner satisfies this burden, the claimant will be found not to be disabled; if, however, the Commissioner does not make an adequate showing, a finding of disability will follow. 20 C.F.R. §§ 404.1520(a)-(f)(1).

The Court notes that a claimant seeking to satisfy his burden must establish that he became disabled prior to the expiration of his insured status. *Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985). Evidence of an impairment that became disabling only after the date last insured cannot be the basis for the determination of entitlement for disability benefits, even though the impairment may have existed before a claimant's insured status expired. *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989).

## B. The ALJ's Decision

Applying the standards set forth above, the ALJ found as follows:

1. The claimant met the disability insured status requirements of the Act on March 16, 1982, the date the claimant stated he became unable to work, and continued to meet them through December 31, 1987.

---

strength tasks such as lifting or pushing — and "non-exertional impairments" — limitations such as postural or manipulative impairments that, although affecting an ability to work, do not affect the claimant's physical strength. 20 C.F.R. § 404.1569a(b)-(c).

Where a claimant suffers only from exertional impairments, the ALJ applies the "Medical Vocational Guidelines," 20 C.F.R. Reg. No. 4, Subpt. P, App. 2, to determine whether a claimant is disabled. 20 C.F.R. § 404.1569a(b). The Guidelines consist of a matrix of four factors identified by Congress — physical ability, age, education, and work experience — and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where, as here, a claimant suffers from both exertional and non-exertional limitations,

the rules [in the Guidelines] are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rules(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capacity is further diminished in terms of types of jobs that would be contraindicated by the non-exertional limitations.

20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, § 200.00(3)(2).

2. The claimant has not engaged in substantial gainful activity since March 1982.
3. The medical evidence establishes that the claimant has severe status post lumbar laminectomy, history of low back pain, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
4. Claimant's complaints of pain and other symptoms are found to be substantiated by the evidence of record but not to the extent as to preclude light work activities.
5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for strenuous lifting and carrying.
6. The claimant is unable to perform his past relevant work as a pipefitter.
7. The claimant's residual functional capacity for the full range of light work is reduced by the limit indicated above. . . .
11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 and Rule 202.18(c), Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."
12. The claimant's additional nonexertional pain limitations do not reduce his capacity to perform the full range of light work. Moreover, vocational experts [sic] input at the hearing established a significant number of jobs in the national economy which he could perform. Examples of such jobs are: spot cleaner, garment inspector and garment bagger.
13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 1987.

(Tr. 16-17).

## C. Plaintiff's Challenge

Plaintiff asks this Court to reverse the decision of the ALJ. Unfortunately, the Court has difficulty assessing the precise nature

of plaintiff's challenge. Plaintiff's complaint is vaguely worded, asserting only that there is insufficient evidence to support the ALJ's findings. Nor did plaintiff make any effort to clarify his challenge in his response to the Commissioner's motion for judgment on the pleadings.[3] Regardless, the Court will assume that plaintiff intends to challenge those findings of the ALJ adverse to plaintiff — first, that plaintiff's condition failed to meet an impairment listed in the regulations (step 3); second, that plaintiff remained capable of light work (step 4); and third, that there were substantial jobs existing in the national economy that plaintiff could perform (step 5).[4]

The Court is persuaded that there is insufficient evidence in support of the ALJ's decision in step 4 of the analysis. For purposes of clarity, however, the Court will analyze below each of the ALJ's findings:

## 1. Plaintiff's Impairment

As noted, the ALJ found that plaintiff had not performed any substantial gainful activity since March 1982. Therefore, application of the sequential analysis set forth above required the ALJ next to assess plaintiff's impairments to determine (1) whether they were severe and, (2) if so, whether such impairments met the criteria of a listing in the appendix of impairments such that

---

[3] Plaintiff, in his response to the government's motion, proffered no argument whatsoever on the merits of his claim. Rather, plaintiff argued only that there are gaps in the transcript of the administrative hearing of such magnitude as to prevent the Court from reviewing adequately the grounds for the ALJ's decision. Upon order of the Magistrate Judge, the government provided plaintiff a copy of the tape of the hearing and plaintiff was given ten days to "file any motion deemed appropriate." Order of Mar. 29, 1996. To this date, plaintiff has filed nothing.

As to plaintiff's argument regarding omissions in the transcript, a review of that document reveals that, between one and two times per page, words or small portions of testimony were inaudible. These omissions are slight, however, and do not make it impossible to comprehend the testimony from its context. *See Ward v. Heckler,* 786 F.2d 844, 848 (8th Cir. 1986) (small omissions of testimony "although distracting . . . did not interfere with comprehension of the testimony to an extent that would hinder fair review").

[4] The Court is sorely tempted to deem the arguments of plaintiff waived and to grant judgment in favor of the Commissioner. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."), *cert. denied,* 494 U.S. 1082, 108 L. Ed. 2d 944, 110 S. Ct. 1814 (1990). Because the Court fears that an error may have been made, however, it will perform the analysis that plaintiff's counsel did not.

plaintiff would be per se disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 [hereinafter "Appendix 1"]. Before a claimant will be found to be automatically disabled, the listed impairments pertaining to disorders of the spine in Appendix 1 require both (1) pain, muscle spasm, and significant limitation of motion in the spine and (2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. Appendix 1, § 1.05(C)(1)-(2).

■ Applying these criteria, the ALJ concluded that plaintiff "does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1." (Tr. 16). The ALJ provided minimal discussion regarding the findings underpinning this conclusion. Regardless, the Court is persuaded that the ALJ's conclusion is supported by substantial evidence. The record does contain a diagnosis of disk herniation (Tr. 145) as well as evidence of pain and of limitation of motion (Tr. 158, 159). There is, however, little in the record to suggest that plaintiff suffered "significant" motor loss as required by Appendix 1. *See Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991) (ruling that to qualify as disabled under a listed impairment, a client must satisfy all of the elements of the listed impairment). Dr. Payne, plaintiff's treating physician, stated on two occasions that plaintiff's motor function was normal. Dr. Payne's conclusion is echoed by two examining consultants, Dr. Stilps and Dr. Acosta. Dr. Stilps noted in March 1983 that plaintiff

> was examined in an examination gown and his gait pattern was within normal limits without limp, list or limitation of motion. He performed heal and toe walking satisfactorily. Range of motion of the lumbo-sacral spine was tested in a standing position and he was able to forward flex to a point where his finger tips were within six inches of the floor without difficulty. No muscle spasms were noted. Remainder of the range of motion parameters were within normal limits in the back. Neck range of motion was within normal limits without discomfort. Neurological examination of the upper and lower extremities including motor, sensory and deep

tendon reflex modalities were within normal limits. No muscle atrophy was measured in the lower extremities.

(Tr. 164-65). Similarly, Dr. Acosta found no evidence of muscle spasm or of sensory or reflex loss. (Tr. 179).

■ It is true that Dr. Payne did, in two of her reports, note some impairment of motor function.[5] *See* Tr. 157 ("Motor testing reveals weakness of the left quadriceps, long extensor of the great toe and small toe extensors."); Tr. 159 ("Motor testing revealed weakness of the left great toe extensor . . . and the right hamstrings and glutei."). That said, this finding does not mandate reversal of the ALJ's decision. Although there is some evidence of motor loss — perhaps enough to persuade the Court to find in plaintiff's favor were review of this matter de novo — there remains substantial evidence to support the ALJ's conclusion. *De Nafo v. Finch*, 436 F.2d 737, 739-40 (3d Cir. 1971) (noting that the Secretary's decision must be affirmed where there exists substantial evidence to support it, even though the record may also support a contrary conclusion).

## 2. Plaintiff's Residual Functional Capacity

Having found that plaintiff's condition did not qualify as an Appendix 1 impairment, the ALJ next turned to plaintiff's residual

---

[5] In addition, plaintiff himself maintained throughout the hearing that his motor function and sensory reflexes were impaired. Plaintiff testified that he suffered from severe and constant pain during the period at issue, was unable to walk, and could sit for no more than an hour. (Tr. 30-31). Additionally, plaintiff stated that he had lost strength in his hands and had difficulty holding things. (Tr. 39). Following surgery, plaintiff experienced only a slight decrease in pain. (Tr. 32).

The above evidence of subjective pain is relevant to the ALJ's determination. Indeed, despite defendant's suggestions to the contrary, pain unaccompanied by objective findings may support a claim for benefits. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). That said, "while the ALJ must consider subjective symptoms, where he affirmatively addresses the issue in his decision, specifies his reasons for rejecting them, and where his conclusion is supported by the record, he is deemed to have discretion to reject a claim of disabling pain." *Capoferri v. Harris*, 501 F. Supp. 32, 37 (E.D. Pa. 1980) (citing *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974)), *aff'd*, 649 F.2d 858 (3d Cir. 1981); *see also Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (noting that "the ALJ has discretion to evaluate the credibility of a claimant" in making a determination regarding the extent of the pain alleged). This is precisely the path taken by the ALJ, who gave full consideration to plaintiff's claims of pain, but found that they were not credible to the extent alleged in part because "there is no evidence of any serious muscular weakness or sensory loss or physical deterioration that is present in cases of severe and continuous pain." (Tr. 14). This conclusion is supported by evidence in the record: Dr. Acosta suggested in June 1985 that plaintiff "seems to be clinically improved, possibly more than he is ready to admit." (Tr. 180).

functional capacity. The ALJ concluded that, considering plaintiff's exertional and non-exertional limitations, plaintiff had the residual functional capacity to perform light work activity. "Light work" is defined as follows:

> light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 404.1567(b).

The Court is concerned by the paucity of evidence supporting the ALJ's conclusion regarding plaintiff's residual functional capacity. Significantly, plaintiff's treating physician, Dr. Payne, assessed plaintiff's capacities at a level somewhat less than necessary to perform light work. As Dr. Payne explained, "[plaintiff] should not lift objects heavier than ten pounds and should avoid prolonged sitting, standing or walking." (Tr. 157). In contrast, light work, as defined above, clearly contemplates extended sitting, walking and standing, with possible lifting of up to twenty pounds.

It is true, as the Commissioner notes, that Dr. Pedersen — plaintiff's treating physician commencing in October 1987 — suggested that plaintiff had greater physical capacity. Dr. Pedersen opined that although plaintiff was limited in the amounts he could push, pull, or lift, he could, during an eight-hour workday, stand or walk for a total of six hours, and could sit indefinitely. (Tr. 196). Dr. Pedersen also noted that plaintiff could lift up to 40 pounds. (Tr. 196). Indeed, the ALJ relied upon Dr. Pedersen's reports in reaching his conclusion. (Tr. 14).

■ That said, the Court is troubled by the fact that Dr. Pedersen's opinion was rendered in June 1993 — nearly six years *after* plaintiff's insured status expired. The critical question before this Court is whether plaintiff became disabled *prior* to the expi-

ration of his insured status, however. *Kane*, 776 F.2d at 1131 n.1. Traditionally, a claimant (who bears the burden of proving disability at this stage) is limited in his ability to rely on medical opinions adduced after the expiration of claimant's insured status; medical reports containing observations made after the period of disability can be relevant in assessing a claimant's disability only insofar as such reports relate to or provide evidence of claimant's pre-expiration condition. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *Wooldridge v. Secretary of HHS*, 816 F.2d 157, 160 (4th Cir. 1987); *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983). The Court sees no reason why the ALJ should not be similarly limited in his reliance on post-expiration reports to discredit a claimant's demonstration of disability.

Accordingly, Dr. Pedersen's 1993 medical reports will be of significance only if they can be said to relate to plaintiff's pre-expiration condition. The Court finds nothing in the record to indicate such relationship. It is clear that Dr. Pedersen had knowledge of plaintiff's medical history. (Tr. 191). That said, nowhere in his reports does Dr. Pedersen make express (or even imply) that his assessment of plaintiff's capacities describes plaintiff's condition prior to December 31, 1987.[6] Without evidence of such relation back, the evidentiary value of Dr. Pedersen's reports must be drastically discounted.

█ Significantly, the record does contain evidence, in addition to that proffered by Dr. Pedersen, which suggests that plaintiff can indeed perform light work. For example, Dr. Acosta concluded that although plaintiff could not return to hard laboring, he could be retrained for light endeavors. (Tr. 180). Similarly, Dr. Stilps, whose report is quoted extensively above, suggested that plaintiff had only limited impairments. (Tr. 164-65). Again, however, the Court must question the value of this evidence. Both Dr. Acosta and Dr. Stilps were examining consultants. It is well-settled that "in

---

[6] In this vein, the Court notes that Dr. Pedersen subsequently concluded, on November 19, 1993, that plaintiff "at present, is 100% medically disabled and unable to work." (Tr. at 210). Again, the relevance of this opinion is questionable as it was rendered six years after plaintiff's insured status expired.

considering a claim for disability benefits, greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant."[7] *Adorno v. Shalala,* 40 F.3d 43, 47 (3d Cir. 1994); see also Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) ("[A] court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once . . . ."). Although the ALJ is ultimately free to reject the findings of a treating physician in favor of those of examining consultants, the ALJ must provide some reason for doing so. *Adorno,* 40 F.3d at 48 ("The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). This the ALJ did not do.[8]

■ Ultimately, although the record contains evidence to suggest that plaintiff is indeed capable of light work, such evidence is of limited probative value. For this reason, and despite the deference to be accorded the ALJ's decision, the Court cannot find that substantial evidence supports the ALJ's assessment of plaintiff's residual functional capacity. "When . . . there is not substantial evidence to support one of the ALJ's factual findings and his decision must therefore be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."[9] *Faucher v. Secretary of HHS,* 17 F.3d 171, 175-76 (6th Cir. 1994) (citing Sullivan v.

---

[7] Statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of an examining physician where the treating physician's statements were conclusory in nature. *See, e.g., Brand v. Secretary of the Dep't of HEW,* 623 F.2d 523, 527-28 (8th Cir. 1980). Here, however, Dr. Payne's conclusions are supported by extensive analysis.

[8] In all other respects, the ALJ's assessment of plaintiff's disability was properly performed. More particularly, in his analysis, the ALJ considered both plaintiff's exertional and non-exertional limitations, as required by 20 C.F.R. § 404.1569(d). *See supra* n.2. In considering plaintiff's non-exertional limitations, the ALJ found that plaintiff could not perform "constant bending and squatting." (Tr. 15). The ALJ concluded, however, that such limitations "do not reduce his capacity to perform the full range of light work." (Tr. 17).

[9] Sentence four of § 405(g) states that "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing

*Finkelstein*, 496 U.S. 617, 625-26, 110 L. Ed. 2d 563, 110 S. Ct. 2658 (1990)). Accordingly, the Court will reverse the ALJ's determination that the plaintiff was capable of light work and will remand this matter for further consideration of the relationship between Dr. Pedersen's 1993 (and subsequent) medical reports to plaintiff's pre-expiration condition. Should the ALJ find no such relationship — as the Court believes is likely — the ALJ must then consider whether, in light of the testimony of Dr. Payne, plaintiff can nonetheless be characterized as capable of light work. If the ALJ's decision in this regard is dependent upon the opinion of the examining consultants, the ALJ should provide specific reasons for rejecting the opinion of plaintiff's treating physician in favor of these consultants.

### 3. Jobs in the National Economy

■ The Court turns to the ALJ's final finding adverse to plaintiff, in which the ALJ concluded that plaintiff was capable of performing substantial work existing in the national economy. The Court notes at the outset that the ALJ premised this final finding upon his earlier conclusion that plaintiff had the residual functional capacity for light work. If, upon remand, the ALJ concludes that he has overstated plaintiff's capacities, the ALJ will be required to reexamine whether jobs indeed exist in the national economy that plaintiff is capable of performing. Should the ALJ reaffirm his assessment of plaintiff's residual functional capacity, however, no further analysis will be necessary, for the Court is convinced that substantial evidence supports the ALJ's determination that jobs exist in the national economy that plaintiff — if capable of light work — can perform. To explain:

42 U.S.C. § 423(d)(2) defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." This statutory definition is supplemented by 20 C.F.R. § 404.1566(b), which provides:

---

the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

work exists in the national economy when there is a significant number of jobs . . . having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered "work which exists in the national economy."

Here, the ALJ premised his conclusion that plaintiff was capable of performing substantial work in the national economy on the testimony of a single vocational expert. The expert's testimony on this point was as follows:

ALJ: In the first hypothesis, let's assume that we have a claimant of the age — of the claimant's education, age, and work experience and that I were to find that the record as a whole describes a person whose physical abilities allow him to perform only sedentary and light jobs. Could a person with such a profile perform the jobs that the claimant did before?
VE: No, sir.
ALJ: Could the person perform other jobs that exist in the national economy which are compatible with the age, education and work experience?
VE: Yes, there is [sic] a lot of jobs in the economy which classify light and sedentary that the person could perform. For instance, some of the jobs are in the garment industry. Jobs as spot cleaners and garment inspectors, garment baggers are routine, repetitive, simple, concrete jobs, which are — [inaudible] light positions and classified — I would — as skills — you need a few days to learn it. And classified as light mostly, and sedentary. In terms of incidence in the national economy, mainly in Puerto Rico, which is part of the national economy, we can find about 1,000 spot cleaners in this industry. We can find about 1,200 garment inspectors and we can find about 1,100 garment baggers in that industry. . . .
ALJ: Okay. Let's suppose, in the next hypothesis, that the record shows that this claimant has additional limitations

378

which are of a postural nature and this claimant has to alternate positions during the day, from sitting to standing, from standing to sitting. Would the person with that additional limitation be able to perform the jobs that you stated before?

VE: Well, all the jobs I mentioned, that's one of the characteristics they have, can alternate position convenient.

(Tr. 46-47).

■■ ■ The testimony of a vocational expert constitutes substantial evidence for purposes of an ALJ's decision. *See, e.g., Bradford v. Secretary of HHS*, 803 F.2d 871, 874 (6th Cir. 1986). Here, the expert indicated that 1,500 jobs within plaintiff's capacities exist in the Caribbean region. No more is required.

### Conclusion

The Court is satisfied that substantial evidence exists in the record to support the determination of the ALJ with regard to his conclusions that (1) plaintiff's condition failed to meet an impairment listed in the regulations (step 3); and (2) plaintiff, with a residual functional capacity for light work, remained capable of performing substantial work existing in the national economy (step 5). The Court cannot say the same for the ALJ's finding regarding plaintiff's residual functional capacity itself, however. For this reason, the Commissioner's decision must be reversed and this matter remanded for further consideration consistent with this opinion.

### ORDER

This matter comes before the Court on defendant's motion for judgment on the pleadings. Having carefully considered the submissions of the parties and for reasons stated in the attached opinion, it is hereby

ORDERED that defendant's motion for judgment on the pleadings is DENIED. The Commissioner's determination is REVERSED

and the case is REMANDED for further consideration consistent with this opinion.