Frederick HANSLEY, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. 87–118–CIV–7.

United States District Court,
E.D. North Carolina,
Wilmington Division.

Jan. 23, 1989.

James B. Gillespie, Jr., Wilmington, N.C., for plaintiff.

---

## ORDER

DUPREE, District Judge.

Plaintiff, Arlene Hansley, collector of the estate of Frederick Hansley (hereinafter "claimant"), brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Secretary of Health and Human Services denying claimant a period of disability and disability insurance benefits under Sections 216(i) and 223(a) of the Act, *id.* §§ 416(i), 423(a). The action is before the court on plaintiff's and defendant's cross-motions for judgment on the pleadings. F.R.Civ.P. 12(c).

On September 15, 1983, claimant filed an application for disability benefits alleging July 24, 1983 as the onset date, the date on which he suffered a myocardial infarction. The application was denied by an administrative law judge (ALJ) on July 20, 1984. Following a request for review, the Appeals Council remanded the case on February 8, 1985 because of errors committed by the ALJ. Claimant was again denied benefits by an ALJ on June 5, 1985. On January 31, 1986, the Appeals Council remanded the case pursuant to the district court order in *Hyatt v. Heckler*, 807 F.2d 376 (4th Cir.1986). This remand resulted in another denial of benefits by an ALJ on May 29, 1986. Claimant requested review of that decision and submitted additional evidence to the Appeals Council. On October 23, 1987, the Appeals Council found claimant totally disabled based on the additional evidence but only as of February 4, 1987. Claimant then filed the instant action alleging the actual onset date of disability was July 24, 1983 rather than February 4, 1987.[1]

In support of her motion for judgment on the pleadings, plaintiff alleges claimant's peripheral vascular disease, coronary artery disease, ischemic heart disease and back conditions were proven severe enough to render him disabled within the requirements of the Social Security Act. Plaintiff also contends the Secretary erred in concluding claimant could perform a full range of sedentary activity by failing to properly analyze his subjective complaints, by failing to evaluate the full extent of his limitations, by failing to consider his impairments in combination, and by failing to abide by the vocational medical guidelines of the Secretary.

The scope of judicial review of the Secretary's decision is limited to determining whether there is substantial evidence to support the findings and conclusion that plaintiff was not entitled to disability benefits for the period in question. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966) (citations omitted). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less that a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Id.* The court's role is not one of resolving conflicts in the evidence. Instead it must weigh conflicting evidence only insofar as is necessary to determine that the evidence in support of that decision is substantial in relation to the evidence as a whole. *Thom-*

---

1. Based on materials submitted by his attorney, claimant apparently died on May 9, 1988 from complications arising from coronary artery dis-
ease. By order dated January 17, 1989, this court allowed substitution of claimant's wife as plaintiff in this matter.

*as v. Celebrezze,* 331 F.2d 541 (4th Cir. 1964); *Tyler v. Weinberger,* 409 F.Supp. 776 (E.D.Va.1976).

A person is disabled and eligible to receive social security benefits when that person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* § 423(d)(2)(A). *See also* 20 C.F.R. § 404.1520 (evaluation of disability in general); *id.* Part 404, Subpart P, Appendix 1 (listing of disabling impairments).

The various hearings established that at the time of his heart attack in July 1983, claimant was forty-one years old and had a tenth grade education. He had worked as a longshoreman for twenty years and had injured his back on October 1, 1974, resulting in his being out of work off and on for several years. However, by 1982, claimant had returned to fulltime work so that he was earning $27,000 annually and he continued to work until his heart attack on July 24, 1983.

### A. Peripheral Artery Disease

 Plaintiff first argues the Secretary erred as to the date when claimant's peripheral artery disease reached a level of impairment entitling him to benefits. On February 4, 1987, claimant underwent a treadmill exercise test to evaluate his peripheral artery disease. The results of this test were presented to the Appeals Council which determined that claimant met Listing 4.13(B)(2) of Part 404, Subpart P, Appendix 1, as of February 4, 1987. Listing 4.13(B) requires:

B. Intermittent claudication with marked impairment of peripheral arterial

circulation as determined by Doppler studies showing:

1. Resting ankle/brachial systolic blood pressure ratio of less than 0.50; or

2. Decrease in systolic blood pressure at ankle or exercise ... to 50 percent or more of preexercise level *and* requiring 10 minutes or more to return to preexercise level. (Emphasis in original.)

Claimant met Listing 4.13(B)(2) with ratios of .31 and .50 in his right and left leg respectively. R.p. 425. These measurements were not done following any of claimant's previous treadmill tests which were performed to determine whether claimant met the listings under Section 4.04(A) relating to ischemic heart disease. However, Dr. Martin Conley, claimant's cardiac physician, indicated that clinically claimant had demonstrated severe bilateral claudication during the first treadmill test on September 11, 1983 due to the fact the test had to be discontinued because of claudication in claimant's lower legs. R.p. 435–36. Indeed, the lower extremity claudication was noted by Dr. Conley as the more significant of claimant's ailments based upon his examination in September 1983. R.p. 345. Nevertheless, the Appeals Council found the impairment only dated from the February 1987 test date and relied on the findings of Dr. Andre Tse which were based on a single examination of claimant on March 14, 1985.

Dr. Tse performed a static Doppler study pursuant to 4.13(B)(1) which showed a resting ankle/brachial systolic blood pressure ratio of 0.94 in the right leg and 0.83 in the left leg. Listing 4.13(B)(1) requires a ratio of less than 0.50 in order to find disability. Based on these results, Dr. Tse concluded claimant suffered mild intermittent claudication affecting his legs with the left leg the more severe. Dr. Tse also had claimant perform a treadmill test. However, the test was stopped after six minutes because of claudication in claimant's left leg, the same reason the test was halted by Dr. Conley in September 1983. Measurements were not taken after exercise as required for a listing level impairment under 4.13(B)(2). The only occasion these measurements were performed was in Febru-

ary 1987 when claimant met the impairment levels. Significantly, the February 1987 pre-exercise measurements performed by Dr. Conley were not at a ratio which would meet the listing in 4.13(B)(1) either, indicating that claimant met a listing level impairment only after exercise. There were no measurements in the record indicating whether claimant met Listing 4.13(B)(2) before February 1987. However, Dr. Conley noted the results of the February 1987 test were consistent with the findings of the September 1983 test which had been performed shortly after claimant's heart attack and indicated bilateral claudication. R.p. 436.

■ When a listing level impairment is established, the date of onset may reasonably be established by clinical evidence and testimony from a treating physician and the actual test date is not conclusive in establishing the onset of disability. *Necessary v. Bowen,* 671 F.Supp. 1086 (E.D.N.C. 1987). The opinion of an examining physician as to the date of onset of disability is appropriate, even if given in retrospect. *Wooldridge v. Bowen,* 816 F.2d 157 (4th Cir.1987).

■ The opinion of a medical advisor who does not examine a claimant can constitute support for a decision denying benefits when the denial is also supported by other medical evidence of record. *Smith v. Schweiker,* 795 F.2d 343, 346 (4th Cir.1986). However, the only post-exercise measurements performed pursuant to Listing 4.13(B)(2) were done on February 4, 1987. Claimant's treating physician stated that the same problem that claimant experienced in February 1987 was present in September 1983 and although formal arterial measurements were not done then, clinically, claimant demonstrated severe bilateral claudication. Dr. Paul Ventry, a physician retained by the Secretary, concluded plaintiff met Listing 4.13(B)(2) as of February 4, 1987 but made no specific finding regarding claimant's meeting the listing before that date. Nevertheless, the Appeals Council concluded that the peripheral artery disease was of a progressive nature, apparently relying on Dr. Tse's examina-

tion in March 1985 and on a report of April 1, 1986, from Dr. Conley which revealed no jugular venous distention or ankle edema. The report also found claimant's peripheral pulses present except for decreased left pedal pulses.

The ALJ discounted Dr. Conley's opinions that claimant was disabled because of inconsistencies in his statements. Specifically, the ALJ noted that Dr. Conley infrequently saw claimant and that annual forms completed by him indicated that claimant was more severely restricted than reflected in Dr. Conley's previous opinions. However, there was no evidence that claimant would not have met Listing 4.13(B)(2) had he been tested earlier. The fact that claimant's leg cramping stopped all the treadmill tests suggests strongly that his claudication rose to a listing level before the February 1987 measurements. Therefore, while the Secretary's decision that claimant met Listing 4.13(B)(2) is supported by substantial evidence, the onset date of February 4, 1987 is not.

**B. Coronary Artery Disease**

Claimant also points to his coronary artery disease as establishing disability. After suffering his myocardial infarction in July 1983, claimant was eventually taken to Duke University Medical Center where a discharge summary by Dr. Harry Phillips indicated claimant was suffering from "significant 2–vessel coronary heart disease, subtotal stenosis of the left circumflex system and total occlusion of the dominant right coronary artery." (R.p. 315.) Dr. Phillips' conclusion was based on a cardiac catheterization which showed claimant's right coronary artery was one hundred percent occluded. Dr. Conley stated that claimant's heart condition was inoperable due to the construction of claimant's heart. Section 4.04(B)(7)(b) provides for a finding of disability where there is a showing of seventy percent or more narrowing of a proximal coronary artery but only in the absence of a report of a negative acceptable treadmill exercise test. Indeed, Dr. Ventry conceded that listing 4.04(B)(7)(b) was met except for the treadmill tests of

September 1983 and March 1985. R.p. 432. However, it is clear from the record that neither the Appeals Council nor the ALJ considered evidence pertaining to claimant's narrowing of a proximal coronary artery and instead relied solely on the treadmill tests in denying disability under Section 4.04.

■ Although the question has apparently not been addressed in this circuit, the Secretary's preference for a treadmill test to the exclusion of other evidence in cases concerning ischemic heart disease has been held in other jurisdictions to conflict with the provisions of 42 U.S.C. §§ 423 and 1382 which require the consideration of all relevant evidence in an individual's case record. *State of New York v. Bowen*, 655 F.Supp. 136, 142–43 (S.D.N.Y.1987). The record does not reflect the Secretary considered any evidence other than the treadmill tests in determining claimant was not disabled due to the blockage in his coronary artery. As noted by the court in *Bowen*, a determination of a claimant's medical condition is among the most individualized decisions the Secretary makes. *Id.* at 143. To ignore medical findings other than treadmill test results deprives the claimant of the opportunity to prove his particular limitations, an issue on which the claimant bears the burden of making a prima facie showing of disability. *Id.* at 144. Accordingly, the court concludes the Appeals Council and ALJ improperly considered the treadmill test results to the exclusion of other relevant medical evidence in the record which established a listing level disability.

### C. The Secretary's Application of the Grids

Plaintiff also contends the Secretary improperly applied the grids in finding claimant not disabled before February 1987. Plaintiff argues the Secretary erred in concluding claimant could not perform a full range of sedentary activity by failing to properly analyze the subjective complaints of claimant, by failing to evaluate the full extent of his limitations, by failing to consider his impairments in combination, and by failing to follow the vocational medical guidelines of the Secretary.

Plaintiff argues the Secretary erred in mechanically applying the grids to deny disability. Plaintiff points to an example given in the regulations in which disability is allowed when the grids might not otherwise allow the claim. That example provides:

> Example 2: An illiterate 41 year old individual with mild mental retardation (IQ of 78) is restricted to unskilled sedentary work and cannot perform vocationally relevant past work, which had consisted of unskilled agricultural field work; his or her particular characteristics do not specifically meet any of the rules in Appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.

20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h).

At the time of his heart attack, claimant was forty-one years old. The ALJ found claimant was literate and had a limited education based on his schooling through the tenth grade. The ALJ also found that claimant's past work as a longshoreman was probably unskilled as to its complexity. Applying the grids to these facts, the ALJ concluded that claimant was not disabled under Rules 201.24 and 201.25 of Appendix 2.

■ The ALJ specifically found that claimant was not capable of performing his past relevant work and this finding is supported by substantial evidence. However, once a claimant seeking disability benefits makes a prima facie showing of a medically determinable impairment which prevents him from returning to his past work, the burden of proof shifts to the Secretary to show that the claimant is capable of performing alternate jobs which exist in the national economy. *Ford v. Heckler*, 572 F.Supp. 992, 993 (E.D.N.C.1983).

Claimant presented evidence from a vocational evaluation report done on Decem-

ber 22, 1986 which concluded he was functionally illiterate.[2] A vocational report is helpful to show actual inability to work. *Gajkowski v. Secretary of Health and Human Services,* 645 F.Supp. 636 (W.D.N.Y. 1986). The vocational rehabilitation report noted that claimant moved and talked quite slowly and found that claimant had reading and spelling scores below the third grade level. It noted that claimant stated he could sit in a straight chair for two hours, on a high stool for less than an hour, stand for a few minutes or walk approximately one mile in one hour. Claimant also stated in the report he could do no bending, crouching or stooping and would have problems pushing and pulling. The report concluded that claimant should be referred to the New Hanover Workshop for an extensive vocational evaluation. While the Appeals Council noted it considered the report, it found the report did not add any significant physical findings to the record.

However, the report specifically found claimant to be functionally illiterate. The Appeals Council did not address this finding, instead simply concurring in the ALJ's finding that claimant possessed a tenth grade education and retained the capacity to perform the full range of sedentary work thus indicating no disability on the basis of Rules 201.24 and 201.25. While rote application of these rules might indicate a finding of not disabled, a finding of disabled is not precluded for individuals under age forty-five who do not meet all the criteria of a specific rule and do not have the ability to perform a full range of sedentary work. Part 404, Subpart P, Appendix 2, § 201.00(h).

Sedentary work involves lifting no more than ten pounds and requires some occasional walking and standing. There was evidence claimant was unable to sit or stand for more than short periods of time. Evidence also showed claimant had difficulty in bending, stooping and twisting.

Based on the vocational report, there was evidence showing claimant was functionally illiterate and at the most possessed a marginal education. Claimant's previous work was unskilled in nature. Claimant's physician concluded claimant was disabled. This conclusion is binding on the factfinder unless there is substantial evidence otherwise. *Hidalgo v. Brown,* 822 F.2d 294 (2d Cir.1987). Based on the evidence of claimant's impairments, the Secretary's finding that claimant could perform the full range of work defined as sedentary is not supported by substantial evidence, especially in light of the Secretary's own example given in Section 201.00(h). Thus the court finds the Secretary erred in applying the grids to deny disability.

D. Conclusion

In light of the above, the court finds: (1) that the Secretary's decision regarding the onset date of claimant's peripheral artery disease is not supported by substantial evidence, (2) that the Secretary erred in relying on treadmill tests to the exclusion of other relevant evidence of claimant's coronary artery disease, and (3) that the Secretary erred in application of the grids by failing to show claimant capable of a full range of sedentary activity. Having determined errors were made in the hearings below, it is within the court's discretion whether to reverse and remand for a calculation of benefits or reverse and remand for a new hearing. *Edwards v. Bowen,* 672 F.Supp. 230, 236 (E.D.N.C.1987). Based on the evidence before it, the court concludes that a finding of disability was warranted as of July 24, 1983. There being no likelihood of any additional evidence being discovered which could be beneficial to the Secretary in that he has had ample opportunity to present evidence supporting his position, the court orders that the decision of the Secretary be reversed and this

---

**2.** A revised Weschler Adult Intelligence Scale test taken on April 1, 1988 discloses that claimant had a verbal IQ of 79, a performance IQ of 89 and a full scale IQ of 83. However, this test does not appear to have been part of the record below and the court will not consider it as the court is restricted to the administrative record below in determining whether the Secretary's decision is supported by substantial evidence. *Huckabee v. Richardson,* 468 F.2d 1380, 1381 (4th Cir.1972).

matter remanded for a calculation of benefits dating from July 24, 1983.